IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 2000 Session

# WILSON PHARMACY, INC., v. GENERAL COMPUTER CORPORATION

**Appeal from the Chancery Court for Washington County**
**No. 32602  Thomas J. Seeley, Jr., Judge**

_____

**FILED SEPTEMBER 21, 2000**

**No. E2000-00733-COA-R3-CV**

_____

The origin of this appeal is a complaint filed by Plaintiff Wilson Pharmacy, Inc., against Defendant General Computer Corporation, seeking damages for allegedly furnishing defective computer hardware and software programs pursuant to contracts entered into between the parties.  The Trial Court found that the provision providing suit must be brought within one year after accrual of the action barred Wilson Pharmacy's claim.  Wilson Pharmacy appeals, contending the contract they entered into was one of adhesion, rendering the contract limitation period ineffective.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and
Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ. joined.

Olen G. Haynes, Johnson City, Tennessee, for Appellant Wilson Pharmacy, Inc.

Ronald S. Range, Jr., and Matthew D. Davison, Johnson City, Tennessee, for Appellee General Computer Corporation

## OPINION

The origin of this appeal is a complaint filed by Plaintiff Wilson Pharmacy, Inc., against Defendant, General Computer Corporation, now known as MedE America of Ohio, Inc. As grounds for its complaint Wilson Pharmacy alleges the following:

1.  Plaintiff is a Tennessee corporation.  Its principal place of business is
located at 525 North State of Franklin Road, Johnson City, Tennessee.

2. The Defendant, General Computer Corporation, is a foreign corporation with offices at 2045 Midway Drive, Twinsburg, Ohio.

3. The Defendant, MedE America, is a foreign corporation with offices at 90 Merrick Avenue, Suite 501, East Meadow, New York. MedE America is the parent corporation of the Defendant, General Computer Corporation.

4. On or about the 17th day of January, 1995, and thereafter, Plaintiff entered into agreements with General Computer Corporation under the terms of which it was represented to the Plaintiff that General Computer Corporation would supply computer hardware and a software program that would support the needs of Wilson Pharmacy's retail and institutional operations.

5. The program provided by the Defendant, General Computer Corporation, was unable to perform according to the published and verbal representations of General computer Corporation. As a consequence, the entire system had to be replaced by the Plaintiff at considerable expense.

6. The Plaintiff paid the sum of $17, 934.00 for the initial software package; the sum of $29,194.61 for computer hardware and related items; the sum of $10,173.98 for training and supplies; the sum of $6,000.00 for leasing a substitute system.

7. The Defendant, MedE America, as parent corporation of the Defendant, General Computer Corporation, has now taken over the contractual and legal obligations of the Defendant, General Computer Corporation.

General Computer filed a motion to dismiss and, in the alternative, for a summary judgment, relying upon the one-year period of limitation for bringing suit contained in the two agreements entered into by the parties:

**5.02 Governing Law and Jurisdiction.**

This Agreement is to be governed by and construed in accordance with the laws of the State of Ohio.[1] No action or proceeding based upon this Agreement or arising out of its performance shall be instituted by CUSTOMER more than one (1) year after the cause of action has accrued. It is expressly agreed that the courts of the State of Ohio shall have personal and subject matter jurisdiction (but not exclusive jurisdiction) to entertain and determine all disputes and claims between the parties hereto, whether for specific performance injunction, declaratory judgment or otherwise both at law and in equity, arising out of or in any way

---

[1] The parties do not contend that Ohio law is different from Tennessee law as applicable to this case.

connected with the validity, construction, breach or anticipated breach of this Agreement.

The Trial Court rejected Wilson Pharmacy's insistence that the contract was one of adhesion and granted General Computers a motion for summary judgment.

Wilson Pharmacy appeals, raising the following issues:

1. The Trial Court erred as a matter of law in failing to overrule General Computer's Motion for Summary Judgment because there was material evidence that the written contract was a contract of adhesion which did not fall within the reasonable expectations of Wilson Pharmacy.

2. The Trial Court erred as a matter of law in failing to overrule General Computer's Motion for Summary Judgment because there was material evidence that the written contract was a contract of adhesion that was unreasonably oppressive and unconscionable to Wilson Pharmacy.

The standard for appellate review of the Trial Court's granting a summary judgment has been recently restated in the Supreme Court case of Staples v. CBL & Associates, Inc., 15 S.W.3d 83, 89 (Tenn. 2000), as follows:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

Aside from the two agreements and various other paper writings made exhibits to the pleading, the only other evidence introduced was the affidavit of Guy B. Wilson, Chief Executive Officer and Chairman of the Board of Wilson Pharmacy, which we quote in full:

1. My name is Guy B. Wilson. I am a resident of Johnson City in Washington County, Tennessee. At all times material herein I was the Chief Executive Officer and the Chairman of the Board for Wilson Pharmacy, Inc.

2. In the latter part of 1994, Wilson Pharmacy, Inc., was contacted by Mr. Bob McKissick, a salesman for General Computer Corporation. Mr. McKissick represented to representatives of Wilson Pharmacy, Inc., that his company was capable of providing computer software that could accommodate the needs of Wilson Pharmacy in its retail pharmacy and nursing home operations. In

November and December, 1994, a series of meetings was held with Mr. McKissick with various representatives of Wilson Pharmacy, Inc., during which time Mr. McKissick represented that General Computer Corporation would be able to supply computer hardware and software programs that would support the needs of Wilson Pharmacy's retail and nursing home operations. Wilson Pharmacy, Inc., was particularly interested in the computer service being offered by General Computer Corporation as there was no other entity known to Wilson Pharmacy, Inc., in the trade at that time that was attempting to provide a comparable service.

3. In January, 1995, a standardized contract, attached herewith as "Exhibit 1", was submitted to me for my signature as the Chief Executive Officer of Wilson Pharmacy, Inc. The contract as submitted was drafted by General Computer Corporation and was submitted to Wilson Pharmacy, Inc., on a take-it-or-leave-it basis. Wilson Pharmacy, Inc., did not participate in any way in the drafting of this standardized contract attached.

4. On or about January 21, 1995, I signed the contract submitted by General Computer Corporation as the Chief Executive Officer of Wilson Pharmacy, Inc., and returned the signed contract to representatives of General Computer Corporation. The contract was then approved by General Computer Corporation on February 3, 1995. The installation of the program and the training of personnel was completed around mid-May, 1995 and within 30 days of continued use of the system, or around mid-June, 1995, it was apparent that the system as installed was unable to perform according to the published and verbal representations of representatives of General Computer Corporation. A lawsuit was not filed against General Computer Corporation within one year from that time, as representatives of General Computer Corporation and Wilson Pharmacy, Inc., spent the next two years attempting to correct the deficiencies of the system. Finally, in June of 1997, it became apparent that the deficiencies could not be corrected to meet the needs of Wilson Pharmacy, Inc., and the system was "shut down" and at considerable expense to Wilson Pharmacy, Inc., another system was installed.

5. Wilson Pharmacy attempted to initiate negotiations with General Computer Corporation through letters of August, September, and October, 1997, with no success. In December, 1997, I initiated contact and discussions were conducted with an attorney, and in January, 1999, I authorized the filing of suit against General Computer Corporation.

6. I am now aware that General Computer Corporation is relying on Paragraph 5.02, of the agreement which provides that "no action or proceeding based upon this agreement or arising out of its performance shall be instituted by

a customer more than one year after the cause of action has accrued." As a customer of General Computer Corporation, I would not have expected such a limitation on the time to file suit as we continued to attempt to correct the deficiencies for over two years after we were aware that the system, as installed, was not meeting the representations of General Computer Corporation. Wilson Pharmacy, Inc., while attempting to correct the deficiencies, was never told by representatives of General Computer Corporation that suit would have to be brought within one year after its cause of action had accrued. Given the circumstances under which we found ourselves, Wilson Pharmacy, Inc., had no choice but to attempt to correct and resolve all those problems that arose. Because the system simply was not as represented by General Computer Corporation, the additional time was needed to allow General Computer Corporation the opportunity to live up to its representations.

The leading case in this State on contracts of adhesion is Buraczynski v. Eyring, 919 S.W.2d 314 (Tenn. 1996). That was a case by a patient against a physician who asserted that a contract providing arbitration precluded the patient's suit. The trial court found in favor of the patient and refused to compel arbitration. This Court reversed the trial court and thereafter the Supreme Court took the case and made the following observation (at page 320):

> An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Black's Law Dictionary 40 (6th ed. 1990); *Broemmer*, 840 P.2d at 1015. Professor Henderson has observed that "the essence of an adhesion contract is that bargaining positions and leverage enable one party 'to select and control risks assumed under the contract.'" 58 Va. L. Rev at 988. Courts generally agree that "[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." *Broemmer*, 840 P.2d at 1016; *Leong*, 788 P.2d at 168; *Pepper*, 693 P.2d at 1260; *Wheeler*, 133 Cal.Rptr. at 783.

In the case at bar we do not believe the statements in the affidavit of Mr. Wilson that he did not know of any other computer corporation which would provide a comparable service, or the conclusory statement that he was offered a standardized contract "on a take-it-or-leave-it basis" are sufficient to show a contract of adhesion and repel the motion to dismiss.

Moreover, in Buraczynski, the Supreme Court, after finding that in that case the contract was one of adhesion, went on to state the following (at page 320):

> Our conclusion that the contracts were contracts of adhesion is not, however, determinative of the contract's enforceability. Enforceability generally

depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable. *Broemmer*, 840 P.2d at 1016. Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party. *Id.*

Thereafter, the Court found the contract was enforceable as the terms were not "beyond the reasonable expectations of an ordinary person or oppressive or unconscionable."

In this case we believe that even if the contract had been one of adhesion, it does not meet the second test set out in Buraczynski.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded to the Circuit Court for collection of costs below. Costs of appeal are adjudged against Wilson Pharmacy, Inc., and its surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE